CENTER FOR DISABILITY ACCESS
Dennis Price, Esq., SBN 279082
Russell Handy, Esq. SBN 195058
Elliott Montgomery, Esq., SBN 279451
100 Pine St., Ste 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
ElliottM@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Andres Gomez**, <br><br> Plaintiff, <br><br> v. <br><br> **Turnbull Wine Cellars,** a California Corporation; <br><br> Defendants. | Case No. 3:22-cv-00533-VC <br><br> **Plaintiff's Responsive Brief Regarding Supplemental Jurisdiction of Unruh in ADA Cases Originally Filed in Federal Court.** <br><br> **Hon. Judge Vince Chhabria** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. 3

I. Introduction ............................................................................................................ 1

    A. AB 1521 and Construction Related Barriers ...................................... 1

    B. Construction-Related Accessibility Claims ........................................ 2

    C. Federal interpretation of the ADA controls resolution of the state claims. ................................................................................................... 5

    D. California law recognizes that website claims are not CRAB violations 7

    E. Request for the Court to seek amicus briefing on the issue from the State of California ................................................................................ 7

II. This history of *Gibbs* and the supplemental jurisdiction statute supports continued jurisdiction. ............................................................................................ 9

III. Plaintiff's State Law Damages ............................................................................. 14

V. Conclusion ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ............................................. 9

*Castillo v. Fortune Foods Incorporated*, Case No. CV 20-3968 PA (JCx) .............. 8

*City of Chicago v. Mills* (1907) 204 U.S. 321 ........................................................... 6

*Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*,
    24 F.3d 1545 (9th Cir. 1994) ................................................................. 10, 11

*Garcia v. Chung Enterprises, L.P.*, No. 3:21-CV-05088-WHO, 2021 WL
    7285264, at *6 (N.D. Cal. Dec. 14, 2021) ....................................................14

*In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994* (N.D. Ill.
    1995) 909 F. Supp. 1083 ................................................................................ 6

*Jankey v. Lee* (2012) 55 Cal. 4th 1038, 1049 ........................................................... 1

*Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770 ............................................ 7

*Mageno v. Hodad's Foundation*, Superior Court of California, Los Angeles Case
    No. 19GDV01517 ............................................................................................ 8

*Mageno v. South Philly Foods, Inc.*, Superior Court of Californa, Los Angeles Case
    No. 19GDCV01254 .......................................................................................... 8

*Robles v. Domino's Pizza, LLC* (9th Cir. 2019) 913 F.3d 898 ................................. 4

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020) ...............14

*Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104 ........ 4

*Wheeler v. City & Cty. of Denver* (1913) 229 U.S. 342 .......................................... 6

**Statutes**

21 CCR § 132 ............................................................................................................. 5

*Cal Civ. Code* § 55.3(2) ............................................................................................ 3

*Cal. Civ. Code* § 51(f) ........................................................................................... 1, 3

*Cal. Civ. Code* § 55.52 .............................................................................................. 4

Cal. Civ. Code § 55.56(g)(1)(A) ................................................................................ 5

*Cal. Civ. Proc.* § 425.55(a)(3)...................................................................................3
*Cal. Civ. Proc.* § 425.55(b) .......................................................................................3

**Other Authorities**

Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute--A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849 (1992) ........9

*Federal Courts Study Committee Implementation and Civil Justice Report Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice,* 101st Cong., 2d Sess. at 708 (1991) ...................................................................................................................9

Pub. L. No. 101-650, 104 Stat. 5089 .........................................................................9

# I. Introduction

This court has set an order to show cause re: retention of supplemental jurisdiction based on the *Arroyo v. Rosas* decision of the Ninth Circuit. While blanket dismissal of state law claims under Rosas is prohibited, it is especially inappropriate in this case, which does not involve the category of claims that were carved at as "exceptional" by the Ninth Circuit.

The Americans with Disabilities Act ("ADA") was a landmark piece of legislation, heralded as a last step in the promise of equality made by the Civil Rights Acts of the 1960s.[1] That law provided plaintiffs an opportunity to seek injunctive relief as well as attorney's fees against non-complying businesses, but declined to create any public enforcement agency, instead relying on private enforcement. The law explicitly waived any preemption of state remedies, inviting states to enact additional penalties to aggrieved plaintiffs.[2] California amended the Unruh Civil Rights Act ("Unruh") to make any violation of a right under the ADA a violation of Unruh.[3]

While the present case invokes both the ADA and Unruh, it does not invoke a violation of a construction-related defect as defined under those state laws and does not implicate the concerns addressed by *Rosas*.

### A.   AB 1521 and Construction Related Barriers

In 2015, California passed AB 1521, implementing a number of changes to state substantive laws and procedural rules involving a class of cases, specifically, construction-related accessibility ("CRA") claims. The literal reading of those statutes, the legislative history relating to it, and other similar

---

[1] Prematurely, given *Bostock v. Clayton County* (2020) 139 S. Ct. 1599
[2] *Jankey v. Lee* (2012) 55 Cal. 4th 1038, 1049.
[3] *Cal. Civ. Code* § 51(f)

1

Response: Unruh Jurisdiction                                    Case No. 3:22-cv-00533-VC

legislation do not contemplate policy or digital access claims within the CRA ambit.

Recognizing the unusual circumstances that lead to the law, the California legislature stated "the provisions of this section are warranted for this limited group of plaintiffs."[4] This should be read as a statement of intent that the statute is to be read narrowly and consistent with prior modifications to the law that consciously did not wholesale replace the application of Unruh to ADA plaintiffs. These plaintiffs are defined as "high-frequency litigants" filing cases pertaining to "construction-related accessibility."[5] CRA is not defined within this provision or given direction on where to find such a definition; however, the term is defined and used consistently throughout a similar law, a narrowing provision of the Unruh Civil Rights Act ("Unruh") in Cal. Civ. Code § 55.3-55.56 et. seq. [6]

### B.   Construction-Related Accessibility Claims

The Unruh Civil Rights Act provides for a $4,000 statutory penalty to any anyone who is a victim of "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990."[7] In a series of laws passed in the past 10 years, limiting provisions have been placed on a subset of these claims, most recently in 2015 with AB 1521.

> "Construction-related accessibility claim" means any claim of a violation of any construction-related accessibility standard, as defined by paragraph (6) of subdivision (a) of Section 55.52, with respect to a place of public accommodation. "Construction-

---

[4] Cal. Civ. Proc. § 425.55(a)(3)
[5] Cal. Civ. Proc. § 425.55(b)
[6] Cal Civ. Code § 55.3(2)
[7] Cal. Civ. Code § 51(f)

2

related accessibility claim" does not include a claim of interference with housing within the meaning of paragraph (2) of subdivision (b) of Section 54.1, **or any claim of interference caused by something other than the construction-related accessibility condition of the property**, including, but not limited to, the conduct of any person.[8] (emphasis added)

In the underlined section, CRA is defined narrowly to exclude any claims not explicitly contained within the definition.

(6) "Construction-related accessibility standard" means a provision, standard, or regulation under state or federal law requiring compliance with **standards for making new construction and existing facilities** accessible to persons with disabilities, including, but not limited to, any provision, standard, or regulation set forth in Section 51, 54, 54.1, or 55 of this code, Section 19955.5 of the Health and Safety Code, the California Building Standards Code (Title 24 of the California Code of Regulations), the federal Americans with Disabilities Act of 1990 (Public Law 101-336; 42 U.S.C. Sec. 12101 et seq.), and the federal Americans with Disabilities Act Accessibility Guidelines (Appendix A to Part 36 of Title 28 of the Code of Federal Regulations).[9] (emphasis added)

This above definition is cited as part of the definition of a CRA in § 55.3. This section makes clear that the context is claims relating to violations of established "standards" for new construction or existing facilities. Websites are not "facilities" or themselves "places of public accommodation" under the

---

[8] *Id.*

[9] Cal. Civ. Code § 55.52

3

ADA.[10] Websites do not have a published set of standards but are rather covered under the ADA by a policy mandate to make services accessible.[11]

While "new construction" and "existing facilities"[12] are not defined by state law, context can be found in the protections afforded to defendants by these sections. Within Cal. Civ. Code § 55.56, the full context of this provision can be seen. This statute provides for reduced damages where a facility is inspected by a Certified Access Specialist.[13] ("CASp") CASp's are individuals licensed by the state based on a rigid set of criteria related to experience in *architecture*.[14] There is no provision to obtain this licensing on the basis of website design or any digital experience; it is solely based on architectural experience or the functional equivalent, such as building inspection.[15] The section goes further to contemplate that damages could be reduced by obtaining building permits,[16] which are irrelevant to issues of website access.

---

[10] *Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104, 1114.

[11] *Robles v. Domino's Pizza, LLC* (9th Cir. 2019) 913 F.3d 898, 904.

[12] It should be noted that under Ninth Circuit law, a website is explicitly not considered a "place" but is rather a service of a "place of public accommodation." Thus any interpretation that places a website within this statute would be incongruent with Ninth Circuit law regarding the way into which websites are construed under the ADA.

[13] Cal. Civ. Code § 55.56(g)(1)(A)

[14] 21 CCR § 132

[15] *Id.*

[16] Cal. Civ. Code § 55.56(g)(1)(C)

4

Response: Unruh Jurisdiction                                                Case No. 3:22-cv-00533-VC

### C. Federal interpretation of the ADA controls resolution of the state claims.

As noted above, Plaintiff's state claims are premised entirely on violation of a right guaranteed under the ADA. "Construction-related claims" typically stem from violations of defined standards promulgated by the Department of Justice in the ADA Standards for Accessible Design. These are objective standards and easily interpreted, with wide consistency, by a court of any jurisdiction. Policy claims, such as those included within website violations, do not have these objective statutory predicates. Plaintiff's state law claims are entirely predicated on resolution of federal law claims. It is entirely likely that resolution of a digital access claim, such as those present in this case will require Department of Justice involvement to interpret the various regulations given the lack of a statutorily clear definition of digital barriers.

The Department of Justice has indicated that they will not file *amicus* briefing on ADA issues in state court. This was an original primary impetus in unifying Counsel's venue of choice, as the firm is on the vanguard of numerous ADA issues and an implementing agency only weighing in on issues in one forum alone justifies choosing that forum, given the deference given to the agency determinations. Since this decision to file primarily in Federal Court, CDA has obtained several victories relating to substantive interpretation of the ADA including: *Karczewski v. DCH Mission Valley LLC* (9th Cir. 2017) 862 F.3d 1006 (establishing that installing hand controls is a reasonable accommodation for disabled individuals attempting to test drive vehicles); *Fortyune v. City of Lomita* (9th Cir. 2014) 766 F.3d 1098 (establishing a right to on-street accessible parking); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1020 (establishing that accessible seating in live events must provide equivalent lines of sight).

Plaintiff's counsel has built a practice that is focused on optimized federal court procedures, including specialized software, hiring near courthouses, and

becoming increasingly familiar with the ECF/PACER system and FRCP. It is a specialized practice.

Counsel concedes that numerous courts have been apprised of the above in other types of cases and still decided against retention of jurisdiction. It's been suggested that the above is just a contrived justification meant as a fig leaf covering avoiding state procedures. This is demonstrably incorrect, as Counsel has been filing nearly exclusively in federal court since before these new procedures went into effect. While the effect may be avoiding California procedures, it is incidental in service of others benefits to our clients. As advocates for our clients, we have simply decided that the Federal Court system better preserves their rights and we've chosen to litigate in that forum.

Despite the above, a litigant is well within his rights to choose the forum that provides him the best procedures.  It is a long-established that when a party has a legitimate basis for federal jurisdiction, "his motive in preferring a Federal tribunal is immaterial."[17] In fact, "the cases are numerous in which it has been decided that the motives of litigants in seeking Federal jurisdiction are immaterial."[18] Thus, "We need not concern ourselves with why these parties prefer to be in federal court so long as there is a legitimate basis for jurisdiction."[19] As the Supreme Court has noted, there is nothing improper with "the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations."[20]

---

[17] *City of Chicago v. Mills* (1907) 204 U.S. 321, 330
[18] *Wheeler v. City & Cty. of Denver* (1913) 229 U.S. 342, 351
[19] *In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994* (N.D. Ill. 1995) 909 F. Supp. 1083, 1090, *aff'd and remanded sub nom. In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994* (7th Cir. 1996) 96 F.3d 932
[20] *Keeton v. Hustler Magazine, Inc.* (1984) 465 U.S. 770, 778–79.

In short, the stated rationale by the various judges who have declined supplemental jurisdiction are improper. Even if taken at face value, that ADA plaintiffs are intentionally "ducking" procedures perceived as burdensome in state court, this is allowed and a court declining otherwise proper jurisdiction on that basis is improper.

### D. California law recognizes that website claims are not CRAB violations

There are a variety of statutory schemes relating to construction-related accessibility barrier claims ("CRAB"). Most recently, the California legislature introduced AB-2917 to include websites in the cases tracked by the California Commission on Disability Access ("CCDA"). The CCDA's scope was previously limited to only CRAB cases, but the legislature found value in the agency's mission and is seeking to add digital cases such as these to the scope. This is being done by amending the scope to include more potential claims, ("or accessibility violations related to an internet website") not by redefining CRAB to include websites. There is no such action to amended 425.55 to include these claims, demonstrating that the legislature is aware that website cases are different.

### E. Request for the Court to seek amicus briefing on the issue from the State of California

While Plaintiff is unaware of any binding authority interpreting "construction-related access" in the context that would be required for a dismissal contemplated by the order issued by this court, this has been addressed by at least two California state court decisions, each unequivocal that a website claim does not qualify.[21] Additionally, at least one Central

---

[21] *Mageno v. South Philly Foods, Inc.,* Superior Court of California, Los Angeles Case No. 19GDCV01254 (Order dated June 26, 2020 adopting tentative as

District judge faced with this decision agreed.[22] Should this court disagree with the rationale of Judges Hofer, Kim, and Anderson, this Court should invite briefing on the issue from an agent of the state of California. The state of California should have the opportunity to weigh in on any issues regarding the interest of the state of California regarding the claims that would be re-filed in state court.

Plaintiff requests that the court ask the Attorney General to file a brief on the questions posed by the court concerning the imputed interest stated by numerous District Judges in the Central District of California of the state of California's desire in having all Unruh/ADA litigation filed in the California Superior Courts. That brief should address the following in order for the court to implement the will of the state of California:

- Are website cases "constructed-related accessibility claims" as defined by state law?
- Does the State of California have a stated preference to "curtail" or otherwise limit legitimate Unruh Civil Rights Act filings based on a violation of the ADA?
- Was the $1,000 fee levied on plaintiffs intended to deter

---

ruling of the court find that website claims are excluded by Cal. Civ. Code § 55.3(a)(2).) (Ruling attached as Exhibit 1); *Mageno v. Hodad's Foundation*, Superior Court of California, Los Angeles Case No. 19GDV01517 (*Minute Order* dated March 16, 2020).

[22] On May 20, 2020, Judge Percy Anderson discharged an Order to Show Cause finding that a website claim under Unruh is not a construction-related accessibility claim. "Because this action involves allegations concerning the accessibility of a website, and therefore is not a construction-related accessibility claim, the Court hereby discharges the Order to Show Cause." *Castillo v. Fortune Foods Incorporated*, Case No. CV 20-3968 PA (JCx) (Dkt. No. 12).

8

> filings, or instead to support those claims that are filed in the state courts?
> - Is the "high-frequency litigant" designation intended to count cases originally filed in Federal court in the total?
> - Did the state anticipate the requirements of state procedure applying in federally filed cases?

Concerns of comity abound in the various orders issuing however it would appear that the Ninth Circuit is projecting its own interpretation of what the state of California wants without actually asking the state.

## II. This history of *Gibbs* and the supplemental jurisdiction statute supports continued jurisdiction.

Under *Gibbs*[23], *Carnegie-Mellon*,[24] and other Supreme Court decisions decided prior to 1990, district courts enjoyed wide flexibility and discretion regarding the exercise of (then) pendent jurisdiction, able to invoke an ever-growing and non-exhaustive list of factors (economy, convenience, fairness, comity, abstention, novelty, complexity, unsettled law, etc.) that the court could consider when deciding whether to exercise supplemental jurisdiction. As the Ninth Circuit explains, the *Gibbs* doctrine of flexibility "led a number of courts to decline pendent jurisdiction in situations not mentioned specifically in *Gibbs*."[25]

---

[23] *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).
[24] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).
[25] *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California*, 24 F.3d 1545, 1553 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

9

But this "very flexibility" led to the "doctrine's most severe criticism."[26] The flexibility and discretion enjoyed by the district courts often led to abuse: "many district courts in the past were hostile to pendent jurisdiction in civil rights cases and used their broad discretion to dismiss supplemental claims, often under the guise of efficiency and fairness."[27] This concern, in fact, was voiced by one of the principle drafters of the abrogating statute, section 1367, Prof. Thomas Mengler, who expressed trepidation at permitting courts to dismiss state law claims when they "predominated" given the abuses by a number of district courts with respect to civil rights cases.[28]

Thus, the Federal Court Study Committee made an express recommendation to Congress that a supplemental jurisdiction statute be enacted, leading to the Judicial Improvements Act of 1990[29] and the enacting of the supplemental jurisdiction statute found at 28 U.S.C. § 1367.

Section 1367(a) states that district courts "*shall* have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ."[30] Thus, concluded the Ninth Circuit, the statute speaks in "mandatory terms."[31] This means that "unless a court properly invokes a section 1367(c)

---

[26] *Executive Software*, 24 F.3d at 1554.
[27] Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute--A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849, 993 (1992)
[28] *Federal Courts Study Committee Implementation and Civil Justice Report Act: Hearings on H.R. 5381 Before the Subcomm. on Courts, Intellectual Property, and the Administration of Justice,* 101st Cong., 2d Sess. at 708 (1991) (the letter of Prof. Thomas M. Mengler).
[29] Pub. L. No. 101-650, 104 Stat. 5089.
[30] *Executive Software*, 24 F.3d at 1555 (emphasis in original).
[31] *Executive Software*, 24 F.3d at 1555.

category . . . supplemental jurisdiction *must be asserted*."[32] The "consequence of the statutory structure," therefore "changes the nature of the *Gibbs* discretionary inquiry."[33]

The district court still enjoys discretion, but such discretion is to be exercised only *after* one of the four statutory bases are found. "Congress intended the exercise of discretion to be *triggered* by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."[34] As the Ninth Circuit notes, it is only after the factual predicate exists that the district court then exercises discretion when applying the *Gibbs* factors. "Once that factual predicate is identified, the exercise of discretion, of course, still is informed by whether remanding the pendent state claims comport with . . . the values of economy, convenience, fairness, and comity."[35]

Thus, when the various courts cite to *Gibbs* for the proposition that supplemental jurisdiction "*is a doctrine of discretion, not of plaintiff's right*,"—is no longer accurate. With the creation of the statute, there is now a two-step process. First, the district court must identify the "factual predicate that corresponds to one of the section 1367(c) categories" and then (and only then) the court must still determine that its decision "comports with the underlying objective" of "accommodating the values of economy, convenience, fairness, and comity."[36] If a district court does not properly identify a factual predicate corresponding with one of the four bases enumerated in § 1367(c), then a plaintiff does have a *right* to supplemental jurisdiction.

---

[32] *Executive Software*, 24 F.3d at 1556 (emphasis added).
[33] *Executive Software*, 24 F.3d at 1556.
[34] *Executive Software*, 24 F.3d at 1557 (emphasis added).
[35] *Executive Software*, 24 F.3d at 1557.
[36] *Executive Software*, 24 F.3d at 1557.

11

*First*, the circumstances must be exceptional, and *second*, that there must be compelling reasons to justify dismissal.[37] In the numerous orders to show cause and rulings declining supplemental jurisdiction on Unruh claims, courts seldom identify which of the 1367(c) bases it is relying upon to decline to exercise supplemental jurisdiction. However, 28 § 1367(c)(4) is most often cited as allowing a court to decline jurisdiction when a case presents "exceptional circumstances." Here, the circumstances that are apparently presented are: Plaintiff has elected to avoid state court procedures. This is not exceptional. In virtually every case that is filed in federal court, the plaintiff has elected to file there instead of state court, as only a small fraction of cases are required to be filed solely in federal jurisdiction. It is not exceptional that a plaintiff would avail himself of supplemental jurisdiction, as it is expressly authorized under federal law.

*Executive Software* contemplated this circumstance, suggesting that compelling rationale is separate from exceptional circumstances, and that while there may be circumstances where a common fact satisfies both, "exceptionality" is a prerequisite.[38] "A court simply must articulate *why the circumstances of the case are exception*al **in addition to** inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction."[39] The court makes plain that the compelling reasons cannot obviate the first prong: "To deprive "in exceptional circumstances" of all meaning would unnecessarily conflate distinct statutory terms, a result that we are reluctant to embrace."[40]

---

[37] *Executive Software North America, Inc.* (9th Cir. 1994) 24 F.3d 1545, 1558
[38] *Id.*
[39] *Id.* (emphasis added)
[40] *Id.*

12

It cannot both be true that Unruh claims are pervasive in the Central District, a dominant share of the court's docket, and that this is also an exceptional circumstance. While Plaintiff grants that the court is exceptionally understaffed, the Ninth Circuit has made clear that that is not a permissible rationale for withholding jurisdiction. As a result, dismissal under 1367(c)(4) is simply improper.

Even under the more recent *Arroyo* decision, declining supplemental jurisdiction over an Unruh claim is merely discretionary, not compelled.[41] In *Arroyo*, the Ninth Circuit panel held a district court did not abuse its discretion in holding that the heightened pleading standards faced by high-frequency litigants in state courts can qualify as "exceptional circumstances" under 28 U.S.C. § 1367(c). In doing so, it weighed core *Gibbs* values of "economy, convenience, fairness, and comity" by briefly looking at the limits placed on HFLs.[42]

In deciding whether to retain jurisdiction, this Court should consider whether the principles of "economy, convenience, fairness, and comity" warrant declining supplemental jurisdiction.[43] While *Arroyo* did find that "extraordinary circumstances" and "compelling reasons" existed for the district court to have declined supplemental jurisdiction "at the outset" of the case, that determination must still be done on a case-by-case basis. *Id*. *Arroyo* does not require a district court to decline jurisdiction.

*Arroyo* held only that the district court did not abuse its discretion in determining that this sort of case presents exceptional circumstances, not that

---

[41] *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021).
[42] *Arroyo* at 1211, citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
[43] *Arroyo* at 1205.

such cases do so as matter of law. Other district courts have retained jurisdiction over Unruh claims, even after *Arroyo*.[44] Even where comity concerns may weigh in favor of declining jurisdiction, "just because one party has some advantage in one forum does not mean that comity interests are fatally undermined."[45]

### III.  Plaintiff's State Law Damages

Plaintiff is seeking only minimum statutory penalties associated with violations of the Unruh civil rights act, up to $4,000 each for each occurrence or incident of deterrence. These claims are entirely predicated on ADA violations and cannot predominate over the claim on which it is predicated.

### V.  Conclusion

Plaintiff respectfully requests this Court retain jurisdiction over the properly filed state law claims, as none of the rationale expressed in *Rosas* justifies the extraordinary dismissal of a claim probably within this court's jurisdiction under § 1367.

//

Dated: May 10, 2022                                CENTER FOR DISABILITY ACCESS

By: /s/ Elliott Montgomery
Elliott Montgomery
Attorneys for Plaintiff

---

[44] *Garcia v. Chung Enterprises, L.P.*, No. 3:21-CV-05088-WHO, 2021 WL 7285264, at *6 (N.D. Cal. Dec. 14, 2021).

[45] *Id.*, *citing as example Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020) (imposing limits on federal equitable relief for California law claims not present in state court).